**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                               :
LUIS ECHEVARRI,                :
                               :  Civil Action No. 05-899 (SRC)
            Petitioner,        :
                               :
       v.                      :      O P I N I O N
                               :
KATHRYN E. MACFARLAND, et al., :
                               :
            Respondents.       :
_____:
```

**APPEARANCES:**

Luis Echevarri, <u>Pro Se</u>
#975998B
South Woods State Prison
215 South Burlington Road
Bridgeton, NJ 08302

H. John Witman III
Division of Criminal Justice
P.O. Box 086
Trenton, NJ 08625
Attorney for Respondents

**CHESLER, District Judge**

Petitioner, Luis Echevarri, filed the within petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Respondents have filed an Answer and the state court record. The Court has considered all submissions. For the reasons set forth below, the Petition will be denied.

**BACKGROUND**

1.  Factual Background

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1),[1] will simply reproduce the Superior Court of New Jersey, Appellate Division's ("Appellate Division") factual recitation:

> On August 26, 1994, after work, defendant went out with his friends.  He drove a van that he was permitted to use by his employer.  They went to the Village Bar and Grill where defendant drank "a lot" of beer and a "few shots" of whisky.  During a telephone call that he made to his family in Puerto Rico from the bar that evening, he learned that his grandmother had died.  Defendant became depressed and drank some more, trying to forget about the death of his grandmother and the fact that he was not with his own children.  To further add to his disturbed mental state, while defendant was driving his friends home, he was stopped by the police and ticketed for drunk driving, carrying an open container of alcohol in a motor vehicle, improper passing, crossing a double line, reckless driving, and driving without a license.  After police processing, defendant eventually retrieved the van and, along the way, continued drinking beer.
>
> He woke up the next morning in the van in his friend's driveway.  From there, he drove the van to his job, but no one was there.  He tried to work, was "so drunk that [he] couldn't do [any]thing," closed the shop, went to the van, and continued to drink.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

2

>        In the van, defendant noticed a gun "on the
>   engine," which he picked up and put to his head.
>   Defendant tried to shoot himself twice, but the gun did
>   not go off.  He told the jury that he wanted to kill
>   himself because he "just wanted to finish [his] life
>   because of [his] kids and [his] grandmother and
>   everything."  He claimed that he fired the gun until it
>   was empty and claimed that, until that day, he had
>   never handled a gun.  Although defendant could not
>   remember how the gun got in the van, he did remember
>   that he had been given the gun and a case of bullets
>   two weeks earlier as collateral by someone to whom he
>   had loaned some money.  Following his unsuccessful
>   attempt at shooting himself, defendant went to his
>   friend's house for a while and then went back to the
>   bar he had been in the night before to "get more
>   drunk."  According to the defendant, he started
>   drinking beer, put his head on the counter, "[a]nd I
>   don't remember nothing else," until waking up in jail.
>
>        The ensuing events, which defendant claimed not to
>   remember, began with a first degree robbery inside the
>   bar, and led to a "cops and robbers" police chase the
>   likes of which are normally only portrayed on
>   television.  Following his eventual arrest, defendant
>   was given his <u>Miranda</u> rights and interrogated by
>   police.

(Respondents' Appendix "Ra" 6 at pp. 3-5).  The Appellate

Division further noted that Petitioner then gave what appeared to

be a voluntary formal statement to police, which was read to the

jury, and that Petitioner did not appear to be under the

influence at the time of his statement.  Although Petitioner

claimed at trial that he did not remember anything that occurred

after he put his head down on the bar, in his statement he

recounted to police that while in the bar, he saw a man take

coins from a machine and decided he would rob them so that the

police would be called, and that he wanted to pretend to shoot at

3

police so that they would shoot and kill him. In his statement he also recalled some of the police chase, and speculated that he did not pull over during the chase because he thought it would have been easier for the police to shoot him in the van. He did not remember shooting at anyone while in the van, but said that it was possible the gun fired accidentally during the pursuit. (Ra6 at pp. 5-6).

During trial, Petitioner stated that he remembered certain events, and did not remember other events. (Ra6 at pp. 6-7).

2.  Procedural History

On March 15, 1995, a Monmouth County Grand Jury indicted the petitioner on seventy-eight counts, including: possession of a weapon for an unlawful purpose, aggravated assault, armed robbery, terroristic threats, attempted murder, eluding, hindering apprehension, resisting arrest, unlawful possession of a weapon, and acquiring a handgun without a permit.[2]

After pretrial motions were heard, Petitioner was tried by jury for nine days, spanning from April 15th through May 1, 1997, in the Superior Court of New Jersey, Law Division, Monmouth County ("Law Division").[3] The jury found the petitioner guilty

---

[2] For a complete list of the 78 count indictment, see Ra15 at pp. 1-2.

[3] Numerous counts of the indictment were dismissed by the State, and a judgement of acquittal was granted on a number of the counts at the end of the State's case. For details concerning the dismissed counts, see Ra15 at pp. 3-5.

4

on certain counts of the indictment, and not guilty on other counts.  On July 2, 1997, Petitioner was sentenced to an aggregate sentence of thirty years imprisonment with an 11-year period of parole ineligibility.

Petitioner appealed his conviction and sentence.  In a per curiam decision dated May 14, 1999, the Appellate Division affirmed the conviction and sentence with one minor exception that is not applicable here.  (Ra6).  An amended judgment of conviction was filed on May 18, 1999 in trial court.  On September 9, 1999, Petitioner's petition for certification was denied by the New Jersey Supreme Court.  (Ra9).

Petitioner filed a motion for Post-Conviction Relief ("PCR") in the trial court on or about November 16, 1999.  On October 24, 2000, the petition was denied in an oral opinion without an evidentiary hearing.  An Order denying the petition was filed on October 27, 2000. (Ra12).  The petitioner appealed the denial, and on September 30, 2003, the denial was affirmed by the Appellate Division.  (Ra16).  Petitioner's petition for certification to the New Jersey Supreme Court was denied on February 13, 2004.  (Ra 19).

The instant petition was received and filed on February 14, 2005.  On February 22, 2005, Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  On

June 6, 2005, Respondents filed an Answer and the state court record.

## **PETITIONER'S CLAIMS**

Petitioner asserts that his counsel was ineffective in violation of his constitutional rights. He argues that counsel was ineffective because: (1) trial counsel failed to ensure that Petitioner had the services of a Spanish interpreter to translate discovery documents; (2) trial counsel failed to object to the testimony of a detective who testified as to trajectory of bullets and was not first qualified as an expert; (3) trial counsel failed to investigate and elicit direct or cross-examinations from one of the State's witnesses, who initially told police that Petitioner wanted to kill a policeman, but later recanted the statement; and (4) trial counsel failed to properly prepare for trial, and consult with Petitioner. (Petition for Writ of Habeas Corpus, ¶ 12).

Petitioner has raised the instant claims before the New Jersey state courts. Therefore, they are properly before this Court for a decision on the merits. See 28 U.S.C. § 2254(b)(1). To the extent that any of the claims are not exhausted, this Court exercises its discretion to decide them on the merits, in accordance with 28 U.S.C. § 2254(b)(2).

## DISCUSSION

**A.   Standards Governing Petitioner's Claims.**

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in

>       light of the evidence presented in the State
>       court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1). The Court analyzed subsection 1 as two clauses: the "contrary to" clause and the "unreasonable application" clause. The Court held that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. A federal court may grant the writ under the "unreasonable application" clause, if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Habeas relief may not be granted under the "unreasonable application" clause unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief. See id. at 411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v. Brennan, 528 U.S. 824 (1999). Thus, the federal court must

decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record.  See Abu-Jamal v. Horn, 2001 WL 1609690, at *12 (E.D. Pa. December 18, 2001). In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations. See id.  Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing evidence.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001)(citing 28 U.S.C. § 2254(e)(1)).  "A finding that is well-supported and subject to the presumption of correctness is not unreasonable."  Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on

9

habeas review." Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001). A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**B.   Petitioner's Ineffective Assistance of Counsel Claims.**

**1.   Standard of Review**

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court held that in order to establish that trial counsel is ineffective, the petitioner must show that "counsel's performance was deficient," in that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed . . . by the Sixth Amendment," and "that the deficient performance prejudiced the defense." Id. at 687. In order to establish prejudice, the defendant must show "a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  State v. Fritz, 105 N.J. 42, 60-61 (1997)(quoting Strickland, 466 U.S. at 694).  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."  Strickland, 466 U.S. at 688.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996), cert. denied 519 U.S. 1020 (1996).

    **2.**    **Claims Regarding Interpreter**

        The PCR judge, utilizing the Strickland standard, held:

> Once again, let me go through the various allegations made and make determinations in regard to

11

> whether or not the defendant has sustained his burden [under Strickland].
>
> The first is the request for an interpreter. Defendant says he was denied effective assistance of counsel because [counsel] failed to insist upon an interpreter. He says that [counsel] was ineffective because he advised the Court that Mr. Echevarri agreed to proceed in English. Additionally, defendant contends that the Court only conducted a cursory interview with him to determine if he could understand English.
>
> \* \* \*
>
> Here, I find that Mr. Echevarri has not proven that his trial counsel violated his constitutional rights such that the defendant would be entitled to post conviction relief for ineffective assistance of counsel on the basis that no interpreter was provided for him. Clearly, between defense counsel's discussions with the defendant about his ability to proceed without an interpreter and counsel's conversation with the judge regarding defendant's ability to understand English, [counsel's] performance was not so deficient that he was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment.
>
> Moreover, the trial Judge . . . was put on notice of the language problem of the defendant and did make an inquiry as to the defendant's language skills. During the Judge's examination of the defendant, Mr. Echevarri told [the judge] that he understood everything that had been discussed between the Judge and his attorney. He responded appropriately to the questions that were asked, never claimed that an interpreter was necessary, and never said that throughout any of the proceedings that he didn't understand anything.

(Ra34 at pp. 13-17).

The Appellate Division reviewed Petitioner's ineffective assistance of counsel claims and found that "they are without

sufficient merit to warrant discussion in a written opinion." (Ra16 at p. 3).

Prior to the suppression hearing in this case, the trial court conducted a voir dire of Petitioner to determine whether or not an interpreter was needed for trial and for pretrial hearings. (Ra22 at pp. 3-8). Counsel informed the judge that Petitioner had understood when he spoke in English to him, and that counsel's "only reservation was his inability to read English, not only due to his education background but because of his indicating . . . that he has a problem reading English." (Ra 22 at p. 3). The trial judge then addressed Petitioner, who conveyed that he had understood everything that had happened so far that day, and that he understands English, but cannot read English, and that he can read Spanish. The judge determined that an interpreter was not needed for trial. (Ra22 at pp. 3-7).

Here, Petitioner argues that his counsel should have arranged for an interpreter to interpret discovery documents from English to Spanish for him. The Court finds this claim without merit. First, counsel did convey to the trial judge that Petitioner could not read English; therefore, he was aware of any potential problem concerning English language documents. Also, Petitioner does not claim that his attorney did not verbally discuss the discovery documents with him in English, which he would have understood, as Petitioner could speak and understand

13

English.  Finally, Petitioner has not demonstrated how, had he been provided an interpreter to interpret discovery documents from English to Spanish, the ultimate outcome of his case would have been different.

Furthermore, Petitioner has not demonstrated that the actions of the state courts, which applied the proper <u>Strickland</u> standard to this claim, "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Accordingly, this ground for a writ of habeas corpus will be denied.

### 3. **Claims Regarding Failure to Object**

The PCR judge held, with respect to counsel's failure to object to the testimony of the detective:

> . . . defendant argues that Detective Meyer, without being qualified as an expert witness, without a proper foundation provided by the State, testified to conclusions about the firing of bullets in the direction that they traveled.
>
> * * *
>
> Here, the reason defense counsel may not have objected to the testimony of Detective Meyer, I find was strategic.
> * * *
> It is apparent that trial counsel was aware of the qualifications needed to be an expert and thus he chose, as part of his trial tactics, not to object to specific parts of Detective Meyer's testimony.

14

>        Did he make a mistake?  He may have.  Is it
>   relevant to the ultimate determination of the case or
>   critical to it?  I find it is not.

(Ra34 at pp. 17-19).

The Appellate Division reviewed Petitioner's ineffective assistance of counsel claims and found that "they are without sufficient merit to warrant discussion in a written opinion." (Ra16 at p. 3).

Decisions by trial counsel with regard to examination of witnesses are strategic by nature and necessitate a strong level of deference to the attorney's assessment. See Diggs v. Owens, 833 F.2d 439, 444-45 (3d Cir. 1987), cert. denied, 485 U.S. 979 (1988).  Here, as the PCR judge noted, defense counsel may not have objected to the testimony of the detective due to his trial strategy.  There is no deficient performance when counsel's decision was plainly a strategic choice.  The Court finds nothing to indicate that the state court decision on this issue was based on an unreasonable application of the facts in light of the evidence presented at trial.  Nor was the court's decision contrary to established federal law set forth in Strickland. Petitioner has not demonstrated that the state court decision, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  See Matteo, 171 F.3d at 891.  This claim will be denied for lack of merit.

### 4. Claims Regarding Failure to Call a Witness

The PCR judge held, with respect to counsel's failure to call a witness:

> The next issue has to do with the failure to call a witness Jesus DeJesus. Defendant argues that the failure to allow the State's witness to recant his testimony prior to trial constitutes ineffective assistance of counsel. Defendant asserts that Jesus DeJesus wanted to clarify that defendant never stated that he wanted to kill a policeman.
>
> Additionally, defendant argues that that person, DeJesus, told the prosecutor he wanted to change his version of the story that was recorded by the police. Consequently, the defendant believes counsel's failure to interview DeJesus amounts to ineffective assistance of counsel claim because it prevented counsel from using the potential investigator as a witness to impeach DeJesus.
>
> In determining the reasonableness of counsel's performance, all relevant circumstances must be taken into account, including the possibility that counsel's decisions were based upon sound trial strategy rather than incompetency or deficiency.
>
> I really don't understand this claim. Trial counsel's decision not to have DeJesus interviewed as a means of impeachment appears to be either a tactical decision or really of no significance.

(Ra34 at pp. 19-21).

The Appellate Division reviewed Petitioner's ineffective assistance of counsel claims and found that "they are without sufficient merit to warrant discussion in a written opinion." (Ra16 at p. 3).

As stated previously, there is no deficient performance when counsel's decision was plainly a strategic choice. Nonetheless,

Petitioner fails to demonstrate how the outcome of the trial might have been different had this witness been called to testify. A review of the entire record indicates that there was substantial testimony and evidence, including Petitioner's own statement, for the jury to determine that he was guilty of certain acts. The Court finds nothing to indicate that the state court decision on this issue was based on an unreasonable application of the facts in light of the evidence presented at trial. Nor was the court's decision contrary to established federal law set forth in Strickland. Petitioner has not demonstrated that the state court decision, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified. See Matteo, 171 F.3d at 891. This claim will also be denied for lack of merit.

### 5. Claims Regarding Failure to Prepare

The PCR judge found, with respect to Petitioner's claim that counsel did not adequately prepare for trial:

> Here, defendant, I find, has not made a prima facie showing that trial counsel's investigation or alleged lack of communication amounted to ineffective assistance of counsel. The fact that a criminal defense attorney could have conducted a more thorough investigation does not establish that attorney's performance was outside the wide range of reasonable effective assistance.
>
> * * *
>
> The fact that there may have been five meetings is really insufficient to show that there was inadequate preparation, inadequate investigation, inadequate presentation or inadequate communication.

17

> There is no showing made by this defendant that anything [counsel] did or did not do would have altered the ultimate outcome of the case.

(Ra34 at pp. 21-23).

The Appellate Division reviewed Petitioner's ineffective assistance of counsel claims and found that "they are without sufficient merit to warrant discussion in a written opinion." (Ra16 at p. 3).

Trial counsel is only required to make "reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691.  After a review of the entire record provided, the Court finds that Petitioner's trial counsel ably represented Petitioner with a clear understanding of the evidence, witnesses and critical issues in the case.  It cannot be said that he was ill-prepared to defend Petitioner.  Additionally, as the PCR judge stated, Petitioner has not demonstrated what counsel should have done that he did not do that would have changed the outcome of the case.

As such, Petitioner has not demonstrated that the actions of the state courts, which applied the proper federal law, "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding." Accordingly, this ground for a writ of habeas corpus will be denied.

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 is denied. The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253. An appropriate Order accompanies this Opinion.

                                               s/
                               STANLEY R. CHESLER
                       United States District Judge

Dated: 12/13/05